ELLIOTT *v.* ELLIOTT.

5-194                                          262 S. W. 2d 149

Opinion delivered November 16, 1953.

*Eugene Coffelt*, for appellant.

*Rex W. Perkins* and *Jeff Duty*, for appellee.

GRIFFIN SMITH, Chief Justice. Max and Bobbie Elliott, whose first marriage was solemnized in February, 1944, were divorced in 1948. They remarried in July of that year and lived together until May 26, 1949, then separated. Bobbie (the wife) procured a divorce in September, 1949, on the ground of "unmerited reproach, contempt, studied neglect, abuse, and many other things habitually and systematically pursued."

When the decree was rendered the couple's three children were infants, the oldest being three and a half years old. Bobbie was given the custody, "subject to the right of the defendant [father] to have said children visit with him and his parents two week ends out of each month, [these] visits to be either on succeeding or alternate week ends". There was a finding that the father had agreed to pay $80 per month to aid in the support and maintenance of his children. Personal property was divided upon a consent basis.

In November, 1952, Max petitioned for a modification of the decree and asked for full custody of the children. His claim was predicated upon allegations of changed conditions and his present ability to discharge the duties of a father.

Facts revealed by admissions in the petition and at trial were that Bobbie is employed by Southwestern Bell Telephone Company at Tulsa, Oklahoma. Her weekly salary is $51. The children are with her mother and father not far from where their father resides. They attend church, go to school by a convenient bus route, and with the exception of short periods in a hospital when tonsils were removed they have been healthy. Max testified that prior to his divorce from Bobbie they agreed that she should have custody of the children. The arrangement was made "outside of court", but he "guessed" it was presented to the judge. At any rate, "that is what we agreed on".

The distance from Benton county to Tulsa is slightly more than 100 miles. Bobbie visits the children week ends, sends them some money, buys toys and small neces-

sities, and procures desirable things for them, but in the main they are supported by her mother and father who receive the $80 payments. There is no friction between Max and his former *in-laws,* but on the contrary their relationships have been cordial except for minor incidents, such as the father's defeated desire to see the children or have them with him when they were ill.

Bobbie spends $20 to $25 a month telephoning the children or for bus fares from Tulsa at a cost of $5.50 for the round trip. There was an abundance of testimony sustaining the mother's contention that the children were in a wholesome environment. The father's principal complaint is that he is occasionally deprived of visitations on week ends. This, the evidence indicates, is because Bobbie is not able to obtain leave during mid-week and the conflict necessarily occurs. She is willing for the father to have the children at other times, but feels that the economic circumstances which keep her in Tulsa justify the course of conduct she has pursued.

Max Elliott is now married to a woman who is 21 years of age. She was first married when but sixteen and has a four-year-old child as a result of that union and an infant by her present husband. The child by her first husband lives with its maternal grandparents. While Mrs. Elliott did not join in the petition for custody of her husband's three children by his first wife, she is willing to care for them and thinks they should be allowed to grow up with the new baby—this in spite of the fact that her own four-year-old child is not in that situation.

On the issue of fitness to confer upon Bobbie's three children the care, supervision, and affection they are entitled to, Max testified that his monthly income from the government because of a 70% disability was $236, but that he was employed at $60 per week. This would amount to $7,952 per year from the two sources. After deducting monthly payments of $80 directed in the decree of 1949 appellant's income would be $6,992. He testified that it cost between $350 and $400 per month to maintain

"the four members of my family." Presumptively this reference was to the new wife, her four-year-old child, and the four-months-old baby, and himself. This would leave a differential of $2,192. Nothing was said about taxes, and it is possible that the living expenses mentioned by petitioner included these items.

The petitioner admitted that he had been a bootlegger, but insisted that his former wife assisted in the illegal transactions. When asked whether he could name one person in Arkansas who would testify in support of this imputation he replied that the witnesses were not available. Max and his present wife had also been arrested for contributing to the delinquency of a minor—a girl seemingly so promiscuous that in addition to petitioner and his wife, seven boys were involved. A plea of guilty with a $25 fine resulted from the charge against Max, but the present Mrs. Elliott (who was not divorced at the time, but who was keeping steady company with Max) was released when Max entered his guilty plea. In extenuation Max contended that he was not guilty, but "took the rap" to keep the other boys from going to the penitentiary.

The chancellor declined to modify the order of custody. There was no appeal from the decree that the respondent's cross-action for an increase of the monthly allowance should be denied, hence that issue is not before us.

Affirmed.